JOHNSON-MCREYNOLDS CHEVROLET CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53100.   Filed November 19, 1956.

---

*J. J. Fairbank, Jr., Esq.*, for the petitioner.
*James A. Scott, Esq.*, for the respondent.

302

OPINION.

RICE, *Judge:* In support of his determination disallowing the deduction taken by petitioner because of its payment of a claim in 1949, respondent contends that the amount paid was directly related to the exchange of the building for the stock owned by Johnson's estate; that such exchange was clearly a partial liquidation, as defined by section 115 (i)[2] of the 1939 Code; and that, therefore, no gain or loss may be recognized on the transaction. The petitioner, on the other hand, contends that the payment which it made to the contractor was only an ordinary compromise of a claim which arose in the normal course of its business and that it is entitled to a deduction of the full amount paid, as an ordinary and necessary business expense.

We think neither argument presents the correct solution to this problem. Petitioner's argument is wrong because it fails to take cognizance of the whole factual background to which the payment in question was directly related. We think the respondent, on the other hand, has misconstrued the statutory meaning of partial liquidation and is pressing an argument here which is contrary to his own regulations. Petitioner's business activities were in no way reduced and it continued to operate as a Chevrolet automobile dealer on at least as full a scale as ever before, subsequent to the transfer.

The transaction possesses some of the characteristics of both a sale and a partial liquidation. However, we think that the transfer by petitioner of its incompleted building for which it received its own stock, together with an amount of cash, should be treated as a sale of its property for income tax purposes. Regulations 111, section 29.22 (a)–15, provide that:

if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. * * *

We think that is what happened here.

The payment which petitioner made was directly related to the building and was clearly an additional cost thereof. All of the trans-

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(1) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

actions occurred in 1949. The net result of the whole transaction, therefore, was that it sold its building, which had a cost basis to it of $182,663.50, for cash and shares of its stock which had a value of $175,000. Hence, it sustained a loss in the amount of $7,663.50 on such sale. *Country Club Estates, Inc.*, 22 T. C. 1283 (1954); *C. M. Menzies, Inc.*, 34 B. T. A. 163 (1936); *Dorsey Co.* v. *Commissioner*, 76 F. 2d 339 (C. A. 5, 1935), affirming a Memorandum Opinion of this Court dated June 16, 1934, certiorari denied 296 U. S. 589 (1935).

The real property which petitioner sold was property used in its trade or business within the meaning of section 117 (a) (1),[3] and the loss on its sale is a fully deductible loss which the petitioner is entitled to claim in computing its taxable income for 1949. *Carter-Colton Cigar Co.*, 9 T. C. 219 (1947).

Petitioner contends that the sale of the cars was the sale of property used in its trade or business within the meaning of section 117 (j),[4] and that the gains therefrom are taxable as capital gains. The respondent, on the other hand, contends, in support of his determination that such gains were ordinary income, that the cars were the stock-in-trade of petitioner's business, held for sale to its customers, within the meaning of section 117 (j).

The respondent's determination that the automobiles in question were the stock-in-trade of petitioner's business is presumptively correct, and we think on this record that the petitioner has failed to overcome that presumption. The issue is entirely one of fact, and the two essential facts which petitioner failed to establish are: (1) That the automobiles were not property of a kind includible in inventory if on hand at the close of the taxable year; and (2) that the automobiles were not held by it primarily for sale to customers in the ordinary course of its trade or business.

Petitioner relies heavily on *Latimer-Looney Chevrolet, Inc.*, 19 T. C. 120 (1952). The respondent, on the other hand, relies on *W. R. Stephens Co.* v. *Commissioner*, 199 F. 2d 665 (C. A. 8, 1952), affirm-

---

[3] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * real property used in the trade or business of the taxpayer;

[4] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *

ing a Memorandum Opinion of this Court dated August 8, 1951. Each of those cases involved the sale by automobile dealers of so-called company cars or demonstrators. In *Latimer-Looney Chevrolet, Inc., supra,* the taxpayer established to our satisfaction that the automobiles there in question were truly used in its business and were not held for sale to customers within the meaning of the statute. In *W. R. Stephens Co.* v. *Commissioner, supra,* the taxpayer failed to show that the automobiles in question, or a majority of them, were so held. We think the petitioner here has likewise failed.

The automobiles here in issue were acquired by it originally as new cars and entered on its books in the new car inventory account. They were thereafter transferred to the so-called company car account when assigned to officials and salesmen. Clearly, the cars were initially acquired from General Motors for sale to customers. We think that the best that can be said on this record is that for a period of approximately a year or less the automobiles in question were temporarily assigned to salesmen and company officials for their use, but that the essential purpose for which they were originally acquired was never changed.

Moreover, the position which the petitioner takes, on this record, seems to us contrary to the basic congressional purpose in providing for a capital gains tax. As the Supreme Court noted in *Corn Products Co.* v. *Commissioner,* 350 U. S. 46 (1955), at page 52:

the capital-asset provision of § 117 must not be so broadly applied as to defeat rather than further the purpose of Congress. *Burnet* v. *Harmel,* 287 U. S. 103, 108. Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss. The preferential treatment provided by § 117 applies to transactions in property which are not the normal source of business income. It was intended "to relieve the taxpayer from * * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions." *Burnet* v. *Harmel,* 287 U₁ S., at 106. Since this section is an exception from the normal tax requirements of the Internal Revenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly. This is necessary to effectuate the basic congressional purpose. * * *

We conclude that the gains which petitioner realized from the sale of the automobiles in question were taxable as ordinary income.

Petitioner conceded at the hearing that if we held the gains from the sale of the automobiles were taxable as ordinary income, the respondent's disallowance of deductions for depreciation on such automobiles was correct.

*Decision will be entered under Rule 50.*