DUVAL MOTOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52499.    Filed April 16, 1957.

*William R. Frazier, Esq.*, and *James P. Hill, Esq.*, for the petitioner.
*Hugh G. Isley, Jr., Esq.*, for the respondent.

48

OPINION.

TURNER, *Judge:* Pursuant to leave granted at the trial, the respondent, by amendment to his answer, now claims that for the fiscal year ended March 31, 1951, the gain from the sale of 5 vehicles additional to those covered in his determination should also be held to have been ordinary income.   The 5 vehicles were 4 trucks and 1 sedan, which had been assigned to and used by the parts and service departments in the ordinary course of their operations, and had been so used from ap-

proximately 2½ to 4 years. The claim as we understand it is that, even though the said vehicles had generally and indefiinitely been committed to use in the conduct of operations of those departments, they were, when withdrawn from service, placed on petitioner's used car lot along with other cars held for sale and from that time and at the date of sale were in fact held primarily for sale to petitioner's customers in the course of its trade or business, and that he, respondent, had been in error in his determination of deficiency in allowing capital gains treatment, under section 117 (j) of the Internal Revenue Code of 1939, of the gain realized. On the other hand, there is no allegation that the depreciation deduction in respect of the 5 vehicles, as claimed by petitioner in its return and allowed by respondent in his determination of deficiency, should now be disallowed.

Aside from the above, however, the issues for decision have been narrowed to a substantial degree, by concessions of the parties both at the trial and on brief. At the trial, petitioner conceded that it had improperly claimed depreciation on specified cars and capital gains treatment of the gain from the sale thereof, in that these cars had not been used by petitioner in its business, but had been assigned to the personal use of wives of petitioner's officials. It also conceded that deductions of a $200 contribution to one Joe Hays and à $50 contribution to the Jax Chamber of Commerce, both in the fiscal year 1952, were not business expenses, as had been claimed. In its reply brief, petitioner has withdrawn any claim for depreciation on the cars still in controversy under the capital gains issue, in the event the Court determines that they were held primarily for sale to customers in the course of its trade or business, and were therefore an exception to section 117 (j).

The respondent, on the other hand, has conceded, on brief, that the automobiles used as Welcome Wagons and those used in the high school driver-training program were used in petitioner's trade or business within the purview of "applicable decisions * * * Cf. *Latimer-Looney Chevrolet, Inc.* [19 T. C. 120]."

In light of the concessions made, and aside from the 5 vehicles covered by respondent's amendment to answer, our inquiry under the capital gains issue is now directed, in the main if not wholly, to cars assigned by petitioner to its officers, department heads, and its new car salesmen, and is whether, on the facts, they constituted property used in petitioner's trade or business, within the meaning of section 117 (j),[4]

---

[4] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for deprecia-

in which case the gain realized on the sale thereof was properly accounted for as capital gain, or whether they constituted "property held by [petitioner] primarily for sale to customers in the ordinary course of [its] trade or business," and were, therefore, specifically excepted from section 117 (j). It is to be noted that the quoted exception to the term "property used in the trade or business," as defined in section 117 (j), does not prescribe that there may be no use whatever of the property in the trade or business, if the exception is to apply, or that it must be held solely for sale to customers. To the contrary, property held by a taxpayer does not, by the terms of the statute, qualify as property used in the trade or business if it is "held * * * primarily for sale to customers * * *." The question then is one of fact. *W. R. Stephens Co.* v. *Commissioner*, 199 F. 2d 665, affirming a Memorandum Opinion of this Court; *Johnson-McReynolds Chevrolet Corporation*, 27 T. C. 300; and *Latimer-Looney Chevrolet, Inc.*, 19 T. C. 120.

We have examined and considered the evidence of record in this case and in our Findings of Fact have set forth in considerable detail and particularity the facts covering and relating to the automobiles in question which are shown by the evidence; and, in our opinion, the facts of record require the conclusion and holding that the said automobiles are within the above-quoted exception to property used in petitioner's trade or business, as that term is defined by section 117 (j). The automobiles were acquired by petitioner from the Ford Motor Company in its normal and usual acquisition of its stock in trade, and at no time was there any thought or intention but that they were to be sold to customers in the ordinary course of petitioner's business. In short, the petitioner looked to the sale of the cars for the recovery of most or substantially all of its investment therein, and not to consumption through use of the vehicles in the course of its operations. It is true that they were assigned temporarily to use in the business and they were temporarily so used, but the assignment and use were at all times conditioned upon their withdrawal from such use, after a period of time, which was comparatively short in relation to the useful life of the automobiles themselves. There was no general or indefinite commitment to use in the business, to say nothing of a final or unqualified commitment, and though temporarily assigned, they were, on the facts, at all times held primarily for sale to customers in the ordinary course of petitioner's business. *Johnson-McReynolds Chev-*

tion provided in section 23 (1), held for more than 6 months, * * * which is not * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

*rolet Corporation, supra,* is, we think, directly in point, and on authority of that case, the question at issue is resolved and decided for the respondent.

Through strenuous effort throughout the trial and on brief, to have the cars in question catalogued as "company cars" rather than "demonstrators," and through emphasis of various exceptional or comparatively rare uses, petitioner seeks to bring its case within the decision of this Court in *Latimer-Looney Chevrolet, Inc., supra.* The respondent, on the other hand, seeking to characterize the cars as demonstrators rather than company cars, strives to avail himself of the reasoning in *W. R. Stephens Co.* v. *Commissioner, supra.* Similar contentions were dealt with in *Johnson-McReynolds Chevrolet Corporation, supra,* and we there demonstrated that the facts as found and which supplied the basis for the decision in the *Latimer-Looney* case differed in substance from the facts shown by the evidence in the *Johnson-McReynolds* case. Such is the situation in the instant case. It is true that there is a parallel between some of the uses to which the cars were put in the instant case and some two or three of the ten stated uses which were dominant in the *Latimer-Looney* case. But cross-examination of petitioner's witnesses in the instant case disclosed that such uses were exceptions rather than the rule, and were not factors of any moment in the operation of petitioner's business.

With respect to the 5 vehicles covered by the respondent's amendment to his answer, we think the respondent's contention is not supported by the facts, and that the vehicles in question, in truth and in fact, were property used by petitioner in its trade or business, within the meaning of section 117 (j). Even if we assume that in character they were originally similar or the same as some items included in petitioner's stock in trade, the facts clearly show that they were generally and indefinitely withdrawn from such stock in trade and committed to use in the ordinary operations of petitioner's business. The facts also show that they continued in such use throughout, or substantially throughout, the period regarded by petitioner as the useful life of such vehicles, and only then were they withdrawn from such use and sold. It is clear, we think, that they are particularly representative of property which Congress had in mind when section 117 (j) was enacted. It is, of course, true that petitioner's principal business was the sale of automobiles, both new and used, and when the 5 vehicles were withdrawn from use in its business petitioner utilized its selling machinery to dispose of them. To say that that fact alone would defeat the applicability of section 117 (j), would in our opinion be wholly unrealistic. The claim of the respondent is denied. See and compare *Nelson A. Farry,* 13 T. C. 8, and *Carl Marx & Co.,* 12 T. C. 1196.

The decisions above, as we understand the case, together with the petitioner's concession on brief, dispose of a depreciation issue which was raised on the pleadings. There was at the time of trial and there is on brief a suggestion of argument in a somewhat "left-handed manner" that in his disallowance of depreciation herein, respondent was challenging the 4-year useful life which petitioner had attributed to the automobiles and on the basis of which the depreciation allowances claimed had been computed. There is, however, no such issue, insofar as the pleadings are concerned. Furthermore, insofar as we are able to determine, the depreciation disallowed related to the automobiles which have been determined to have been held by petitioner primarily for sale to customers in the ordinary course of its trade or business; and subject to the decision reached above on the section 117 (j) issue, the petitioner, as noted, has withdrawn its claim for depreciation on the cars there involved. It is to be noted also that where the respondent in his determination allowed the depreciation as claimed, the allowances, in most if not all instances, had been computed and claimed on the basis of a 4-year useful life.

The remaining issues have to do with the deduction of amounts paid as salary to Jenny L. McRae, wife of petitioner's president, and of various payments to social and recreational clubs and certain contributions or donations made during the taxable years.

In the case of the amounts paid as compensation to Jenny L. McRae, the burden was on the petitioner to show that she actually rendered services to it and the amounts paid constituted reasonable compensation therefor. Beyond broad generalities and stated conclusions of petitioner's president in the course of his testimony, the participation of Jenny McRae in petitioner's business narrowed to two things, namely, attendance at directors' meetings and the passing on, in 1952, of a tip to her husband that a friend or acquaintance of hers, who owned Coca-Cola businesses in southern Florida, might be a potential customer for some trucks. The actual sale of the trucks resulted from the efforts of petitioner's president and those of his son, the son eventually closing the transaction in the next succeeding taxable year, after offering a discount on the selling price previously quoted. We are satisfied from the testimony of her husband that Jenny McRae was a good wife and as a good wife she did take a particular interest in petitioner's business and that she did many things which she would not have done but for that connection, but deduction of the amounts paid to her as compensation may not be allowed on that basis. Furthermore, even if we assume that the efforts which she did put forth in petitioner's behalf were put forth as an officer of the company, and not the wife of petitioner's president, the evidence supplies no basis even with respect to

the trucks for evaluating her services with respect thereto. It may be noted also that petitioner did not pay its directors on the basis of their attendance at directors' meetings, and there is no indication that they regarded any portion of the compensation which it did pay to its directors as being for such attendance. We have carefully considered the evidence, and applying the rule in *Cohan* v. *Commissioner*, 39 F. 2d 540, we have made our finding as to the amounts paid Jenny McRae which we regard as reasonable compensation to her for the services rendered to petitioner by her during the taxable years.

As to various of the remaining items of deduction here in issue, our findings of fact are conclusive both as to deductibility and the amount thereof, and no discussion is indicated. With respect to others, however, the evidence is not sufficient to show whether the payments or contributions were or were not of such nature as to make them deductible. In this latter group are the payments or contributions to the Jacksonville Woman's Club, the Asheville Country Club, the Jacksonville Children's Museum and the University of Florida Alumni Association. As to those items, the respondent is accordingly sustained, by reason of petitioner's failure to carry its burden of proof.

With respect to the gift certificate to H. N. Kirkman, director of the Florida State Highway Patrol, the case of *Wm. T. Stover Co.*, 27 T. C. 434, is directly in point. What was said in that case is, in our opinion, patently applicable here, and on authority of that case, the respondent's disallowance of the deduction claimed is sustained.

*Decision will be entered under Rule 50.*