R. E. MOORHEAD & SON, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92652. Filed July 2, 1963.

*William A. Calhoun,* for the petitioner.
*Thomas J. Moroney, Jr.,* for the respondent.

TRAIN, *Judge:* Respondent determined deficiencies in the income tax liability of petitioner for the calendar years 1957, 1958, and 1959 in the amounts of $8,436.22, $1,343.43, and $2,978.69, respectively. By an amendment to his answer, respondent now claims an additional deficiency of $968.42 for the year 1959.

The issues for decision are as follows:

(1) Whether certain automobiles sold by petitioner in the years 1957, 1958, and 1959 constituted property used in its trade or business, within the meaning of section 1231(b) of the 1954 Code;

(2) Whether petitioner is entitled to an allowance for depreciation on certain company cars; and

(3) If any of the cars were not used in petitioner's trade or business, whether depreciation allowed in years prior to 1957 should serve to reduce the basis of these cars for computing gain or loss.

### FINDINGS OF FACT

Some of the facts have been stipulated and are hereby found as stipulated.

The petitioner, R. E. Moorhead & Son, Inc., was incorporated under the laws of the State of Ohio on November 1, 1947, and has its principal place of business in Mansfield, Ohio. For the calendar years 1957, 1958, and 1959, petitioner filed its Federal income tax returns with the district director of internal revenue, Cleveland, Ohio.

Under a Ford Motor Co. franchise, petitioner conducted an automobile and truck sales business. In that business, it operated a new car and truck department, a used car and truck lot, a parts department, a service department, and a body shop. Petitioner's business encompassed an area within a radius of 8 to 10 miles from Mansfield and included a trade area with a population of 75,000 to 100,000.

During the taxable years, petitioner made the following sales:

| Calendar year | New cars and trucks | Used cars and trucks |
|---|---|---|
| 1957 | 700 | 1,273 |
| 1958 | 488 | 950 |
| 1959 | 637 | 1,104 |

Prior to his death on September 8, 1956, R. E. Moorhead (hereinafter referred to as R. E.) was petitioner's president. After R. E.'s death and during all the years in issue, petitioner's officers and directors were as follows: R. W. Moorhead, president and treasurer; Margaret Moorhead, vice president; Virginia Fairchild, secretary. R. W. Moorhead (hereinafter referred to as Moorhead) was R. E.'s son, Margaret Moorhead (hereinafter referred to as Margaret) was R. E.'s wife, and Virginia Fairchild (hereinafter referred to as Virginia) was R. E.'s daughter. Margaret performed no duties for the corporation except to attend directors meetings. Virginia's only duties other than attending directors meetings was to sign papers as secretary of the company.

Petitioner maintained its accounting records in conformity with the procedure prescribed by the Ford Motor Co. Under such system all new cars were placed in an inventory account. Subsequently, certain cars (hereinafter referred to as company cars) were transferred to a company car account. The cars so transferred were assigned to petitioner's officers, employees, and Mansfield and Madison High Schools. These cars were then titled in the name of the petitioner and were licensed with private license plates. Repairs, depreciation, and insurance on these cars were charged to a separate expense account. The company cars were selected by Moorhead after consultation with the sales manager upon whose judgment he relied.

The schedules on pages 707 and 708 indicate the number of company cars petitioner had, the person to whom each car was assigned, when it was acquired, when it was sold, depreciation taken, and gain reported.

In addition to the company cars, petitioner generally had on hand from two to four demonstrators. If possible, petitioner attempted to get a customer to take a demonstration ride in the car which he considered purchasing. Petitioner also had a tow truck, a parts truck, and a car at the used-car lot.

Moorhead made the decision as to when a company car should be sold. When the company cars were ready for sale, most of them were placed on petitioner's used-car lot. These cars were sold by both new- and used-car salesmen. Used-car sales documents, titles, and car warranties were given to the purchaser. However, if any of the new-car warranty remained, it was also given.

Petitioner employed from 7 to 10 salesmen including the sales manager; all the salesmen were on a strict commission basis.

Automobiles not sold for cash were financed by various financial institutions without recourse on petitioner in 99 percent of its sales.

In the notice of deficiency, respondent determined that petitioner was not entitled to any depreciation on the company cars and also determined that the gain realized on the sale of the company cars held more than 6 months should have been reported as ordinary income.

With exception of the cars used for driver training, the company cars were held primarily for sale to customers in the ordinary course of petitioner's trade or business.

*Capital gains reported on tax returns*

**1957**

| Car No. | Assignee | Title | Date acquired | Date sold | Months held | Sale price | Cost | Depreciation allowed to Jan. 1, 1957 | Depreciation claimed 1957 | 1958 | 1959 | Capital gain Short term | Capital gain Long term |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5715 | R. W. Moorhead | President | Dec. 14, 1956 | Oct. 26, 1957 | 10 | $2,447.99 | $2,619.52 | $523.00 | $459.03 | | | | $811.40 |
| 5716 | ...do... | do | Dec. 28, 1956 | Apr. 30, 1957 | 17 | 2,500.00 | 2,546.07 | 1,400.33 | 445.55 | | | | 1,799.81 |
| 32 | R. E. Moorhead | do | Dec. 6, 1955 | Dec. 17, 1957 | 14 | 2,700.00 | 2,453.91 | 490.78 | 429.43 | | | | 1,166.30 |
| 571 | Margaret Moorhead | Wife of R. W. Moorhead | Oct. 5, 1956 | | | | | | | | | | |
| 572 | Virginia Fairchild | Secretary | do | Apr. 25, 1957 | 7 | 2,505.00 | 2,235.08 | 486.29 | 391.17 | | | | 1,147.38 |
| 5718 | ...do... | do | Apr. 3, 1957 | Dec. 23, 1957 | 9 | 2,400.00 | 2,277.44 | 0 | 494.76 | | | | 617.32 |
| 576 | William Wood | Salesman | Oct. 26, 1956 | Aug. 3, 1957 | 9 | 2,600.00 | 2,212.18 | 442.44 | 387.12 | | | | 1,217.38 |
| 577 | John Niznik | do | do | Oct. 28, 1957 | 12 | 2,205.00 | 2,309.21 | 461.84 | 467.08 | | | | 824.71 |
| 578 | George Angus | do | do | May 31, 1957 | 7 | 2,275.00 | 2,298.98 | 459.80 | 402.33 | | | | 838.15 |
| 579 | Edward Dunn | do | Oct. 27, 1956 | October 1957 | 12 | 2,350.00 | 2,248.18 | 449.64 | 393.40 | | | | 944.86 |
| 5712 | Sheldon Miller | do | Nov. 1, 1956 | Aug. 24, 1957 | 10 | 2,600.00 | 2,275.76 | 455.15 | 398.30 | | | | 1,177.69 |
| 5713 | Gaylord Farber | Sales manager | Nov. 9, 1956 | Nov. 29, 1957 | 13 | 2,405.00 | 2,552.36 | 510.47 | 446.66 | | | | 809.77 |
| 5717 | Harold Doolittle | Salesman | Mar. 15, 1957 | Oct. 29, 1957 | 7 | 2,104.90 | 2,277.39 | 0 | 455.48 | | | | 282.99 |
| 574 | Mansfield High School | Driver training | Oct. 9, 1956 | July 2, 1957 | 8 | 2,050.00 | 1,844.23 | 368.80 | 322.81 | | | | 897.38 |
| Total | | | | | | 31,142.89 | 30,160.31 | 6,049.44 | 5,493.12 | | | | 12,635.14 |

**1958**

| Car No. | Assignee | Title | Date acquired | Date sold | Months held | Sale price | Cost | Depreciation allowed to Jan. 1, 1957 | Depreciation claimed 1957 | 1958 | 1959 | Capital gain Short term | Capital gain Long term |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 582 | R. W. Moorhead | President | Nov. 14, 1957 | Aug. 9, 1958 | 9 | $2,850.00 | $2,616.42 | | $523.28 | $467.87 | | | $1,214.73 |
| 5815 | ...do... | do | July 28, 1958 | Oct. 27, 1958 | 3 | 3,784.05 | 3,779.05 | | | 755.81 | | $760.81 | |
| 5719 | Mrs. R. E. Moorhead | President's mother | Apr. 30, 1957 | Mar. 10, 1958 | 10 | 3,005.00 | 2,810.00 | | 562.00 | 702.50 | | | 1,459.50 |
| 573 | Cloyce Milliron | Used-car manager | Oct. 9, 1956 | Jan. 7, 1958 | 15 | 2,600.00 | 2,304.85 | $460.97 | 806.70 | 576.21 | | | 2,139.03 |
| 585 | ...do... | Salesman | Nov. 16, 1957 | Oct. 27, 1958 | 12 | 2,700.00 | 2,469.44 | | 493.89 | 431.96 | | | 1,156.41 |
| 575 | Harold Amsbaugh | do | Oct. 26, 1956 | Jan. 9, 1958 | 14 | 2,200.00 | 2,212.18 | 442.44 | 774.26 | 553.05 | | | 1,757.57 |
| 584 | Gaylord Farber | Sales manager | Nov. 14, 1957 | Sept. 3, 1958 | 10 | 2,805.00 | 2,552.19 | | 510.44 | 446.63 | | | 1,209.88 |
| 586 | Jackson | Salesman | Nov. 16, 1957 | Mar. 25, 1958 | 4 | 2,305.00 | 2,299.53 | | 459.91 | 402.42 | | | 1,042.37 |
| 587 | John Niznik | do | do | Oct. 27, 1958 | 11 | 2,885.77 | 2,469.44 | | 493.89 | 482.15 | | 867.80 | |
| 588 | Edward Dunn | do | do | Sept. 29, 1958 | 10 | 2,800.00 | 2,412.73 | | 493.22 | 431.56 | | | 1,312.05 |
| 589 | Charles Jarman | do | Nov. 18, 1957 | Feb. 28, 1958 | 3 | 2,377.64 | 2,375.54 | | 475.11 | 415.72 | | 892.93 | |

Capital gains reported on tax returns—Continued

1958—Continued

| Car No. | Assignee | Title | Date acquired | Date sold | Months held | Sale price | Cost | Depreciation allowed to Jan. 1, 1957 | Depreciation claimed | | | Capital gain reported on Schedule (D) Form 1120 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 1957 | 1958 | 1959 | Short term | Long term |
| 5810 | Harold Amsbaugh | Salesman | Nov. 8, 1957 | Feb. 28, 1958 | 4 | $2,466.18 | $2,466.08 | | $493.22 | $431.66 | | $926.98 | $1,815.29 |
| 5811 | Stephen Grassie | do | do | Sept. 30, 1958 | 10 | 2,800.00 | 2,375.54 | | 475.11 | 415.72 | | | 1,548.02 |
| 5812 | Jack Hermes | do | Nov. 12, 1957 | Nov. 7, 1958 | 12 | 2,900.00 | 2,200.08 | | 452.33 | 335.77 | | | 1,995.57 |
| 5714 | Mansfield High School | Driver training. | Nov. 13, 1956 | Feb. 7, 1958 | 14 | 2,400.00 | 2,147.19 | $454.44 | 751.62 | 536.80 | | | |
| | Total | | | | | 40,580.64 | 37,490.26 | 1,357.85 | 7,764.88 | 7,385.83 | | 3,448.52 | 16,150.42 |

1959

| Car No. | Assignee | Title | Date acquired | Date sold | Months held | Sale price | Cost | Depreciation allowed to Jan. 1, 1957 | Depreciation claimed | | | Capital gain reported on Schedule (D) Form 1120 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 1957 | 1958 | 1959 | Short term | Long term |
| 581 | R. W. Moorhead | President | Nov. 8, 1957 | Jan. 7, 1959 | 14 | $2,600.00 | $2,510.00 | | $502.00 | $878.50 | $878.50 | | $2,349.00 |
| 5912 | do | do | Dec. 31, 1958 | May 11, 1959 | 4 | 3,900.00 | 3,684.85 | | | 736.97 | 644.85 | $430.12 | |
| 5814 | Mrs. R. E. Moorhead | President's mother. | Mar. 31, 1958 | Mar. 31, 1959 | 12 | 3,900.00 | 2,927.76 | | | 585.55 | 365.97 | | 1,023.76 |
| 594 | Mrs. R. W. Moorhead | President's wife. | Nov. 24, 1958 | Nov. 13, 1959 | 12 | 3,005.00 | 2,893.67 | | | 578.73 | 506.39 | | 1,196.45 |
| 5813 | Virginia Fairchild | Secretary | Dec. 10, 1957 | Feb. 3, 1959 | 14 | 2,405.00 | 2,526.70 | | 505.34 | 884.35 | 315.84 | | 1,583.83 |
| 591 | Sprague | Salesman | Nov. 19, 1958 | Sept. 4, 1959 | 10 | 2,092.45 | 2,385.88 | | | 477.18 | 417.53 | | 601.28 |
| 592 | Mahaffey | do | do | Sept. 10, 1959 | 10 | 3,072.90 | 2,371.82 | | | 474.36 | 415.07 | | 1,590.51 |
| 595 | Gaylord Farber | Salesmanager | Nov. 24, 1958 | Oct. 5, 1959 | 10 | 3,464.20 | 2,677.18 | | | 535.44 | 468.51 | | 1,790.97 |
| 596 | John Niznik | Salesman | Nov. 21, 1958 | Sept. 3, 1959 | 9 | 2,580.00 | 2,552.96 | | | 510.59 | 446.77 | | 984.40 |
| 598 | Edward Dunn | do | Dec. 10, 1958 | Dec. 9, 1959 | 12 | 2,400.00 | 2,461.01 | | | 492.20 | 430.08 | | 361.87 |
| 5911 | Bonecutter | do | Dec. 29, 1958 | Sept. 4, 1959 | 8 | 2,907.70 | 2,629.14 | | | 525.83 | 460.10 | | 1,264.49 |
| 5914 | Ryan | do | Jan. 23, 1959 | Sept. 15, 1959 | 8 | 2,565.00 | 2,560.21 | | | | 512.04 | | 616.83 |
| 608 | Bonecutter | do | Nov. 2, 1959 | Dec. 30, 1959 | 2 | 2,739.42 | 2,592.24 | | | | 518.45 | 665.63 | |
| 5910 | Mansfield High School | Driver training. | Dec. 29, 1958 | June 15, 1959 | 5 | 2,718.20 | 2,432.95 | | | 511.59 | 448.54 | 404.79 | |
| 583 | do | do | Nov. 16, 1957 | Jan. 20, 1959 | 14 | 2,400.00 | 2,344.65 | | 493.93 | 820.62 | 293.08 | | 1,662.98 |
| 593 | Madison High School | do | Nov. 19, 1958 | Dec. 21, 1959 | 13 | 2,500.00 | 2,476.51 | | | 495.30 | 433.39 | | 952.18 |
| | Total | | | | | 44,349.87 | 42,027.53 | | 1,501.27 | 8,507.21 | 7,555.71 | 1,500.64 | 16,378.55 |

OPINION

## Issue 1

Section 1231 (a) of the 1954 Code [1] provides that where there is a sale or exchange of "property used in the [taxpayer's] trade or business" [2] the gain therefrom will be considered as gain from the sale or exchange of a capital asset held more than 6 months. The issue herein is whether the company cars [3] constitute property used in petitioner's trade or business, within the meaning of section 1231 (b) (1), or whether they constitute property held by petitioner primarily for sale to customers in the ordinary course of its trade or business and therefore are excepted by section 1231 (b) (1) (B) from the capital gains treatment provided for in section 1231 (a). The issue is one of fact. *W. R. Stephens Co.* v. *Commissioner*, 199 F. 2d 665 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court; *Johnson-McReynolds Chevrolet Corporation*, 27 T.C. 300 (1956); *Latimer-Looney Chevrolet, Inc.*, 19 T.C. 120 (1952); *Duval Motor Co.*, 28 T.C. 42 (1957), affd. 264 F. 2d 548 (C.A. 5, 1959).

Petitioner, relying on *Latimer-Looney Chevrolet, Inc., supra*, contends that the company cars were used in its trade or business and were not held primarily for sale to customers in the ordinary course of business. Petitioner contends that cases like *W. R. Stephens Co.* v. *Commissioner*, *Johnson-McReynolds Chevrolet Corporation*, and *Duval Motor Co.*, all *supra*, are distinguishable because it was found that the cars were used primarily as demonstrators. Petitioner contends that in the instant case the cars were actually used [4] in conduct-

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise specified.

[2] The part of sec. 1231(b) which defines "property used in the trade or business" and which is material herein is as follows:

SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(b) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For purposes of this section—

(1) GENERAL RULE.—The term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not—

(A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year,

(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *

[3] Respondent concedes that the company cars that were used for driver training were not held primarily for sale to customers in the ordinary course of petitioner's trade or business. However, the amount of gain that should have been reported on these cars remains in dispute.

[4] Moorhead testified that the company cars were used occasionally for demonstration purposes but were used primarily for transportation to courthouses to file and secure certificates of title; for transportation to the various credit unions located in industrial plants in the area to deliver titles and to arrange financing; to attend auctions in Columbus, Toledo, and Akron; to transport employees to attend Ford Motor Co. schools conducted in Cleveland, Columbus, and Detroit; to transport sales personnel to sales rallies held in various sections of Ohio; to collect downpayments; to collect delinquent service accounts, parts accounts, and body-shop accounts; to transport employees to other

ing its business operations and were used very little, if at all, for demonstration purposes.

We are unable to agree with petitioner.

We do not believe, as petitioner apparently contends, that the touchstone for decision is whether the company cars were used primarily for business purposes other than demonstration. It is to be noted that the exception to the term "property used in the trade or business," provided in section 1231(b)(1)(B), *supra*, does not prescribe that there may be no use whatever of the property in the trade or business if the exception is to apply, or that it must be held solely for sale to customers. To the contrary, property held by a taxpayer does not, by the terms of the statute, qualify as "property used in the trade or business" if it is "held * * * primarily for sale to customers * * *." *Duval Motor Co., supra.* Thus, notwithstanding the fact that property is actually used in the taxpayer's business, it may nevertheless be excluded from the term "property used in the trade or business" as defined in section 1231(b). *Greene-Haldeman*, 31 T.C. 1286 (1959), affd. 282 F. 2d 884 (C.A. 9, 1960). Compare *United States* v. *Massey Motors*, 264 F. 2d 552, 553 (C.A. 5, 1959), affirmed on another issue 364 U.S. 92 (1960).

Merely by being a car dealer, a taxpayer is not by that fact alone deprived of the benefits of section 1231 with regard to cars that are used in his trade or business. The taxpayer car dealer may obtain the capital gains treatment provided for in section 1231(a) when the cars used by him are held for more than 6 months and put to the use for which an automobile is intended in the hands of its ultimate consumer, e.g., transportation of personnel, and commits them over their *reasonable useful life* to that purpose in the operation of his business. *Duval Motor Co.* v. *Commissioner*, 264 F. 2d 548, 551 (C.A. 5, 1959).

In the instant case, conceding, *arguendo*, that the cars in question were actually used for purposes other than demonstration, we are, nevertheless, led to the conclusion that the company cars (other than the driver-training cars) were held primarily for sale to customers. Consideration of time, distance, and condition makes it readily apparent that these cars were not committed to use in the business over their reasonably useful lives. Timewise, the cars were held for relatively short periods of time. Most of the cars were held for less than a year and a few as short a time as 2 to 5 months. The average holding period was slightly under 10 months. Apparently, most of the

---

dealerships in the State to pick up cars; to transport employees to the used-car lot and to the warehouse; for loan to customers whose cars were being repaired; for use by salesmen in locating prospects and calling on prospective customers; for use by employees in community functions such as united appeal drives; for use in parades and civic functions.

cars were sold during or shortly after the model year change. Dis-tancewise, according to Moorhead's testimony, the cars were driven 8,000 to 15,000 miles. However, the short duration that some cars were kept makes it doubtful that they could have been driven that far. But, assuming the cars were driven for this distance, this indi-cates that petitioner only intended to use the cars temporarily [5] and then sell them. On this record, we could not find that the extent of their use represents the reasonable useful life of the cars. Moorhead testified that he considered the condition of the car, the number of miles it had been driven, and the market conditions in deciding when to sell a car. We conclude from the evidence that the market condi-tion (ability to sell the cars) was the primary concern of petitioner and that the other considerations only determined the time at which the sale would be made.

In any event, petitioner has failed to prove that the cars assigned to members of the family were used in the trade or business. There is vague testimony that Moorhead used some of the cars and at times used Margaret's car; however, we are uncertain as to the extent of his use and whether it was primarily for business purposes. As for the cars assigned to Moorhead's mother and sister, there is no evidence concerning these, except for the testimony concerning the use of com-pany cars in general and this is insufficient to sustain petitioner's burden of proof. In addition, there was no direct evidence as to the use R.E. made of the company cars assigned to him. Just exactly why cars were assigned to members of the family who had no real connection with the day-to-day operation of the business was not explained.

Even if we assume that none of the cars were held primarily for sale to customers and that there was no question as to cars assigned to family members, seven of the company cars listed in our findings of facts could not qualify as "property used in the trade or business" within the meaning of section 1231(b)(1). In order to come within the provisions of section 1231, the property must be held for more than 6 months and the foregoing seven cars were not.

In *Latimer-Looney Chevrolet, Inc., supra*, relied on by petitioner, the taxpayer established to our satisfaction that the automobiles there in question were used in its business and were not held primarily for sale to customers. However, as in *Johnson-McReynolds Chevrolet Corporation, supra*, we think the petitioner has failed to make a simi-lar showing herein. Based on the record before us, we hold that the cars in question were held primarily for sale to customers in the ordi-nary course of petitioner's business.

[5] As the Fifth Circuit stated in *Duval Motor Co. v. Commissioner, supra* at 552, foot-note 3, "Clearly where the purpose from start to finish is to sell the cars after use of one-fourth or less of their useful life, such short use is 'temporary.' "

## Issue 2

The issue here is whether, under section 167(a)(1),[6] petitioner is entitled to a deduction for depreciation on its company cars.[7]

In *Massey Motors* v. *United States*, 364 U.S. 92 (1960), the Supreme Court held that a taxpayer is entitled to an allowance for depreciation sufficient to recover only the cost of the asset less the estimated salvage, resale, or secondhand value and that the useful life of an asset must be related to the period for which it may be reasonably expected to be employed in the taxpayer's business. Assuming, *arguendo*, that all of petitioner's company cars were actually used in its trade or business, we have concluded that petitioner is not entitled to a deduction for depreciation for any of the years in question because the cars had a salvage value equivalent to their cost.

Petitioner contends that there are so many uncertainties as to the value of a car at the time it will be sold that the only true salvage value which can be predicted is the amount the vehicle could be sold for in cash and that is the wholesale value. Based on wholesale values, petitioner contends that the salvage value of the cars in question should be 85 percent of cost. To support this contention, petitioner relies on an exhibit taken from the National Automobile Dealers' Association book on wholesale prices which indicates the prices of petitioner's cars at the time they were actually sold.

We find no merit in this contention.

Salvage value is the amount, determined at the time an asset is acquired, which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business. This value should be determined from the taxpayer's experience in disposing of the particular type asset in question, or if he has no experience, then he must make an estimate based on the best information available to him. Of course, there is a risk of error in such projections, but prediction is a necessary element of determining an allowance for depreciation. The possibility of error is significantly

---

[6] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, * * *

[7] A finding that an asset does not qualify as "property used in the trade or business," within the meaning of sec. 1231, does not preclude an allowance for depreciation under sec. 167. *Greene-Haldeman* v. *Commissioner*, 282 F. 2d 884 (C.A. 9, 1960). This result is possible because sec. 167 contemplates only an actual use in the trade or business, whereas, under sec. 1231 this factor alone is not sufficient to satisfy the Code. Though actually so used, an asset may not be "property used in the trade or business" within the meaning of sec. 1231 because it falls within one of the exceptions prescribed by sec. 1231(b).

less where probabilities are relied upon to produce what is hoped to be an accurate estimation of the expense involved in utilizing an asset.

Petitioner's contention is wholly unrealistic. First, the price at which a car can be sold in the wholesale market is no more readily known at the time the car is put into use than any other price. Second, the great majority of petitioner's cars were sold at retail and not wholesale prices. Finally, if hindsight is going to be used as a measure of salvage value, there is no good reason to use a theoretical value when actual values are available.

Looking to petitioner's experience over the years, the evidence indicates that in most cases petitioner was able to sell the company cars for prices in excess of its undepreciated cost. Based on this evidence, we hold that the salvage value of petitioner's cars was cost. Accordingly, respondent's determination is sustained.

## *Issue 3*

Prior to 1957, depreciation had been allowed on 14 of the company cars. On brief petitioner took the alternative position that in the event the company cars were not held to be fixed assets used in the trade or business, then the valuation deduction taken on the vehicles prior to 1957 should not serve to reduce the basis of the cars. In its reply brief, petitioner apparently concedes that depreciation allowed or allowable prior to 1957 should be used to reduce the basis of these cars for subsequent sale. However, petitioner contends that no depreciation was allowed. Petitioner contends that the corporate tax return provides a separate line for the deduction of depreciation and requires that a schedule of the details of such deduction be appended to the return. Petitioner states that in all years it has complied with these instructions and in no case have company cars been listed. Items shown therein, petitioner argues, are the only items on which depreciation was taken. It is contended that "deductions for company car expense (including a valuation reduction) are listed as such on the books and the Federal income tax returns."

There is no merit in petitioner's position. First, the name given to the deduction is not controlling. It is quite obvious that a depreciation deduction was allowed. Second, two of the stipulated exhibits included in the findings of fact quite clearly indicate that *depreciation* was taken in prior years and allowed. Consequently, we hold that prior depreciation will serve to reduce petitioner's basis in the cars it sold.

*Decision will be entered under Rule 50.*