OWENS MACHINERY COMPANY, INC. (FORMERLY LEARY & OWENS MACHINERY COMPANY, INC.), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1365–68.    Filed April 28, 1970.

*Bishop N. Barron*, for the petitioner.
*Robert D. Hoffman*, for the respondent.

OPINION

QUEALY, *Judge:* Respondent determined a deficiency in the Federal income tax of Owens Machinery Co., Inc., for the calendar year 1958 in the amount of $1,874.50. The petitioner claims an overpayment for such year in the amount of $36,017.60 resulting from the carryback of a net operating loss deduction for the calendar year 1961. The sole issue relates to a determination of the amount of loss sustained in the calendar year 1961 on account of certain transactions whereby the petitioner transferred stock of its subsidiary and real property to one of its principal stockholders in exchange for its own stock and cash. The respondent would disallow a part of the loss as constituting a distribution by the petitioner with respect to its stock within the meaning of section 311.[1]

The facts have been stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference.

Owens Machinery Co., Inc., the petitioner, was organized under the laws of the State of Alabama, on March 22, 1945, as Leary & Owens Machinery Co., Inc. On March 1, 1962, the name of the petitioner was changed to Owens Machinery Co., Inc. On March 25, 1968, the date the petition was filed in this case, petitioner had its principal place of business at 3600 Fifth Avenue, North, Birmingham, Ala. For the taxable years 1957 through 1961 petitioner filed its income tax returns with the district director of internal revenue at Birmingham, Ala.

During the years herein involved the principal business activity of the petitioner was the selling, servicing, and repairing of heavy con-.struction equipment. During such years the principal supplier of the petitioner was Allis Chalmers Manufacturing Co.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

As of January 1, 1961, the outstanding capital stock of the petitioner consisted of 2,400 shares of common stock with the par value of $100 per share. On such date Harry J. Leary, president, and Wyatt Owens, vice president, each owned 945 shares of its stock.

On July 9, 1955, petitioner organized a subsidiary corporation, Leary & Owens Equipment Co., Inc. Prior to October 18, 1961, petitioner owned 2,040 shares (85 percent) of the 2,400 shares of capital stock of the subsidiary. The subsidiary, managed by petitioner, engaged in substantially the same business as the petitioner in Montgomery, Ala., and occupied real estate in Montgomery owned by petitioner.

During 1961, and immediately prior thereto, certain differences arose between Harry J. Leary and Wyatt Owens, the principal stockholders of the petitioner. Due to such differences and for other business reasons, Allis Chalmers Manufacturing Co. demanded a reconciliation of the differences of the two principal stockholders and a complete separation of the two corporations, petitioner (whose name was then Leary & Owens Machinery Co., Inc.) and the subsidiary corporation, Leary & Owens Equipment Co., Inc. Allis Chalmers was the major supplier and principal creditor of both petitioner and its subsidiary, Leary & Owens Equipment Co., Inc., and as such supplier and creditor, Allis Chalmers further insisted on the right to approve the agreement between the parties resulting in a separation of the parent corporation, petitioner herein, and the subsidiary corporation. Since both petitioner and the subsidiary corporation were heavily indebted to Allis Chalmers Manufacturing Co., it was in a position to enforce its demands.

After some negotiations, one of the principal stockholders, Harry J. Leary, made an offer to the petitioner to effect the directives of Allis Chalmers Manufacturing Co. The offer (which was approved by Allis Chalmers) stipulated that if petitioner rejected the offer, then Wyatt Owens, the other principal stockholder, would make the same offer which would be accepted by petitioner. The offer thus became a "buy or sell" offer between Mr. Leary and petitioner, due to the fact that either Mr. Leary or Mr. Owens would become the remaining principal stockholder of petitioner. Mr. Leary's offer was accepted by petitioner.

An agreement was entered into on October 18, 1961, between the petitioner and Mr. Leary which provided, in part as follows:

1. The petitioner would transfer 2,040 shares of the stock of its subsidiary to Mr. Leary in exchange for 945 shares of its stock plus $25,000.

2. The petitioner would transfer certain real property at Montgomery, Ala., to Mr. Leary for the sum of $150,000.

3. The indebtedness owing by the petitioner to the subsidiary would be liquidated through the transfer of certain life insurance policies and certain equipment to the subsidiary.

The parties have stipulated that the fair market value of petitioner's stock, as of October 18, 1961, was $50 per share and that petitioner's basis for the 2,040 shares of Leary & Owens Equipment Co., Inc., was $206,960.

The parties have also stipulated that the basis of the Montgomery property was $40,763.17. The consideration received by the petitioner was stated to be $150,000.

In the original examination of the petitioner's return for the year 1961, the respondent treated the sale of the Montgomery property and the exchange of the stock as separate transactions, determining that the petitioner realized a gain on the sale of the Montgomery property and loss on the exchange of its subsidiary's stock for stock and cash. The petitioner accepted that determination. In this proceeding, however, the respondent would treat the exchange of the subsidiary's stock itself as two separate transactions, namely, a sale in part of the subsidiary's stock for $25,000 and a distribution by the petitioner with respect to its stock under section 311 as to the balance of the subsidiary's stock. The respondent would disallow any loss on account of the stock distributed pursuant to section 311.[2]

The petitioner now argues that the entire consideration passing between the parties, consisting of the real property and stock of the subsidiary on the one hand, and the stock of petitioner and cash on the other hand, should be considered together as a single transaction for purposes of determining the gain or loss.

In determining the effect of these transactions, we must look to the agreement as a whole. The exchange of stock for stock and cash, the sale of the Montgomery property, and the settlement of Mr. Leary's debt to the petitioner were interdependent. Each separate transaction was a part of an overall plan designed to separate the two businesses and the interests of the two conflicting stockholders. The consummation of the agreement resulted in a complete separation of the interests of the two stockholders and of the businesses of the petitioner and its former subsidiary.

On the other hand, it does not follow that the tax consequences should be determined by lumping all transactions together into a single sale or exchange for the purpose of striking a balance as is

---

[2] Sec. 311 provides, in part, as follows:

(a) GENERAL RULE.—Except as provided in subsections (b), (c), and (d) of this section and section 453(d), no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of—

(1) its stock (or right to acquire its stock), or

(2) property.

claimed by the petitioner. In determining whether there has been any gain or loss, which necessitates allocation of the consideration flowing between the parties, each transaction must be considered separately. This would be necessary even if the agreement had not, in fact, provided for such separation. *Bryant Heater Co.* v. *Commissioner*, 231 F. 2d 938 (C.A. 6, 1956); *Particelli* v. *Commissioner*, 212 F. 2d 498 (C.A. 9, 1954), affirming a Memorandum Opinion of this Court.

In considering the exchange of 2,040 shares of the stock of its subsidiary for 945 shares of its own stock and $25,000 in cash, the petitioner sustained a loss of $134,710, being the difference between its basis for the subsidiary's stock ($206,960) and the value of the consideration ($72,250) which it received. The respondent would allow as a deduction $46,612.46 of that loss.

On the theory that the transaction can be fragmented into two separate transactions for tax purposes, the respondent seeks to invoke the nonrecognition-of-gain provisions of section 311 with respect to that portion of the stock which was exchanged by the petitioner for its own stock, while allowing a loss on the remainder of the stock which the respondent would treat as having been sold for the sum of $25,000, citing *Roberts & Porter, Inc.*, 37 T.C. 23 (1961), reversed on another issue 307 F. 2d 745 (C.A. 7, 1962). The respondent's brief states:

It is respondent's position that petitioner's transfer of 2,040 shares to Leary constituted, in substance, two separate transactions. First, it was a distribution of part of the 2,040 shares (which part of the shares had a basis of $135,347.54) to Leary in redemption of 945 shares of its own stock. To this extent, recognition of any loss is precluded by section 311 since as provided in Regs. 1.311–1 this was clearly a distribution made in redemption of petitioner's stock other than in complete or partial liquidation. See also Rev. Rul. 68–21, C.B. 1968–1, 104. Second, it was a sale of part of the 2,040 shares (which part of the shares had a basis of $71,612.46) to Leary in exchange for $25,000. To this extent, respondent concedes petitioner sustained a capital loss of $46,612.46 which is to be recognized since, as provided in Regs. 1.311–1(e)(1), section 311 does not apply to a transaction between a corporation and a shareholder in his capacity as a vendee where the fact that such vendee is a shareholder is incidental to the transaction. Clearly, to the extent that petitioner transferred part of the 2,040 shares to Leary for $25,000, the fact that Leary was a shareholder was only incidental to the transaction.

The case of *Roberts & Porter, Inc.* is not in point. In that case an allocation was necessary to determine the amount allocable to the premium and the amount allocable to the convertibility feature of convertible notes issued by the petitioner. In that case it was not a question of "fragmentation."

While the "fragmentation" theory might be desirable in resolving the "all or nothing" issue presented under section 311 where the distributee receives not only its own stock but also cash or other property, it is not for the Court to adopt such a rule without legislative

sanction.[3] We know of no rule which would warrant "fragmenting" such transaction to treat it as an exchange for stock of part of the stock and a sale for cash of the balance. To the contrary, in the application of the related reorganization provisions of the Code, the cash has consistently been regarded as "boot," applicable to all of the shares exchanged. It must be treated as a single exchange of stock for stock and cash. (See *Turnbow* v. *Commissioner*, 368 U.S. 337 (1961).)

In the case before us, the cash payment was a significant element of the total consideration received by the petitioner, namely $25,000 out of a total consideration of $72,250. It was not a situation in which a relatively insignificant cash adjustment is made to avoid the issuance of fractional shares. The payment of $25,000 was a necessary element of the transaction.

Unless the transaction is fragmented—and we have concluded that it should not be—the respondent *impliedly*, *at least*, recognizes that the transaction cannot be characterized as a distribution by the petitioner "with respect to its stock." See *Commissioner* v. *Baan*, 382 F. 2d 485 (C.A. 9, 1967), affd. 391 U.S. 83 (1968), reversing 45 T.C. 71 (1965). In considering the provisions of section 355 of the Code, which also refers to a distribution by a corporation "with respect to its stock,"[4] the Court of Appeals in *Commissioner* v. *Baan, supra*, said:

As the Commissioner correctly states in his argument to this court, whatever meaning may be attached to the word "distribute," standing by itself or in a different context, the phrase "distributes * * * with respect to * * * stock" is a term of art with a consistent meaning throughout the Code. It is used only to refer to distributions without consideration, not to sales for a cash consideration.[11] [Footnote omitted.]

It is not necessary to decide here whether we would follow this language in the case of a spin-off under section 355, where we held otherwise in *Baan* and where we were affirmed in this respect by the Court of Appeals for the Second Circuit in *Commissioner* v. *Gordon*, 382 F. 2d 499. It is sufficient here to decide simply that there was not a distribution under section 311, which has an entirely different purpose and an entirely different legislative history.

That the transaction with respect to the stock of the petitioner should be treated as a "sale or exchange" on account of which gain or loss is recognized, and not as a "distribution with respect to its stock" is also supported by an earlier decision of this Court involving similar facts. *Johnson-McReynolds Chevrolet Corporation*, 27 T.C. 300 (1956).

In the *Johnson-McReynolds Chevrolet Corporation* case the taxpayer had outstanding 2,000 shares of stock of which Johnson owned

---

[3] Watts, "Recognition of Gain or Loss to a Corporation on a Distribution of Property in Exchange for Its Own Stock," 22 Tax Lawyer 182–184.

[4] Sec. 355(a)(1)(i).

914 shares and McReynolds owned 914 shares. The taxpayer was a franchise dealer for the Chevrolet Division of General Motors. Upon the death of Johnson, in order to satisfy the requirements of General Motors, the taxpayer transferred a newly erected building at its cost value of $175,000 and paid $51,378.20 in cash to Johnson's estate in exchange for the 916 shares of stock held by the estate. In the subsequent year, the taxpayer was required to pay an additional $7,663.50 to the contractor on account of the building. The taxpayer deducted this amount as an ordinary loss. The respondent disallowed any deduction on the grounds that the loss was incurred as a result of a distribution in partial liquidation. This Court said:

> The transaction possesses some of the characteristics of both a sale and a partial liquidation. However, we think that the transfer by petitioner of its incompleted building for which it received its own stock, together with an amount of cash, should be treated as a sale of its property for income tax purposes. * * *
>
> *　　*　　*　　*　　*　　*　　*
>
> The payment which petitioner made was directly related to the building and was clearly an additional cost thereof. All of the transactions occurred in 1949. The net result of the whole transaction, therefore, was that it sold its building, which had a cost basis to it of $182,663.50, for cash and shares of its stock which had a value of $175,000. Hence, it sustained a loss in the amount of $7,663.50 on such sale. *Country Club Estates, Inc.*, 22 T.C. 1283 (1954); *C. M. Menzies, Inc.*, 34 B.T.A. 163 (1936); *Dorsey Co. v. Commissioner*, 76 F. 2d 339 (C.A. 5, 1935), affirming a Memorandum Opinion of this Court dated June 16, 1934, certiorari denied 296 U.S. 589 (1935).

Since the exchange herein involved included both petitioner's stock and cash, it did not constitute a distribution by the petitioner with respect to its stock within the meaning of section 311.

*Decision will be entered under Rule 50.*