**Pedro VILA and Graciela Vila, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 67–1192–Civ.

United States District Court
S. D. Florida.
March 21, 1969.

Manuel Zaiac, Miami, Fla., for plaintiffs.

Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., for the United States.

## MEMORANDUM OPINION

FULTON, Chief Judge.

The Plaintiffs, Mr. and Mrs. Vila, instituted this action against the United States for a refund of income taxes in the total amount of $723.89 for the years 1961, 1962 and 1963. They claim that said amount was collected from them erroneously in that the Commissioner disallowed their deduction for the loss of their rental properties which were allegedly confiscated by the Cuban Government after Plaintiffs became residents of the United States.

In 1958, upon the demise of her father, Mrs. Vila inherited from him the following properties:

1. Three-story CBS building located at San Miguel #709, Havana, Cuba;
2. CBS house located at Milagros #109, Havana, Cuba;
3. Three-story building located at Compostela #831, Havana, Cuba;
4. CBS house located at Aguila #863, Havana, Cuba;
5. Two-story CBS building located at Aguila #165, Havana, Cuba.

All of these properties were rented to tenants continuously from 1958, and Mrs. Vila received from them total rents of approximately 900 pesos per month.

On October 14, 1960, the Revolutionary Government of Cuba enacted the Urban Reform Law, Plaintiff's Exhibit 1–A, which outlawed and declared null and void all contracts for the renting of urban property and all transactions involving the conveyance or partial use of urban property. The Urban Reform Law provided for the purchase of such property by the tenants thereof at a fixed price to be paid in monthly installments. The Urban Reform Councils established by the Law were to pay to the present owners of such property certain indemnification in monthly installments, upon application therefor.

Because of the then unstable political situation in Cuba, Mr. and Mrs. Vila left Cuba and came to the United States on October 31, 1960, two weeks after the enactment of the Urban Reform Law. When they left Cuba, and for some time thereafter, it was their intention to later return to their homeland. Mr. and Mrs. Vila never filed an application for compensation under the Urban Reform Law.

On December 5, 1961, Law 989 (Plaintiff's Exhibit 1–B) was enacted by Cuba's Council of Ministers, which Law confiscated all assets left in Cuba by those who had fled. This law provided in pertinent part as follows:

"*Article 1.* The Ministry of the Interior shall have the power to grant

exit permits and reentry permits to persons leaving the country.

If the return does not take place within the period for which the departure has been authorized, the person shall be considered as having permanently abandoned the country.

*Article 2.* In the case of the persons covered by the second paragraph of Article 1, all of their property (personal, real and other), their rights, securities, and valuables of any kind shall be considered nationalized through confiscation to the benefit of the Cuban state, and will be assigned to the appropriate Government agency."

The Law also contains the following "Transitional Provision:"

"Those persons who have abandoned the country before September 14, 1961, with the permission of the Superior Council of Urban Reform or any officials of same, may request, prior to the termination of such period, ratification of the exit permit by the Minister of the Interior with regard to their return to Cuba. The Minister of the Interior shall in his discretion decide whether reentry will be permitted."

The Law then provides that all legal resolutions and regulations contrary to it are thereby abolished.

Mr. and Mrs. Vila never attempted to return to Cuba. They claim that they suffered a loss of the above-described real properties by confiscation of the Cuban Government on December 5, 1961, the date on which Law 989 was enacted, or some time thereafter upon their failure to return to Cuba.

The Government claims that the loss occurred, if at all, on October 14, 1960, on which date the Vila's were still Cuban residents and the Urban Reform Law was promulgated and became effective. The Government contends that Mr. and Mrs. Vila then lost all rights in the properties and retained at best a claim for indemnification. Alternatively, the Government contends that Mr. and Mrs. Vila

abandoned these properties when they left Cuba and failed to return.

Both parties rely for their respective positions upon Section 165 of the Internal Revenue Code, the Treasury Regulations promulgated thereunder, and several cases which have applied Section 165 of the Code and the Regulations to certain factual situations arising out of governmental seizures of property.

Section 165 of the Code provides, in pertinent part, as follows:

"(a) General rule—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

(c) Limitation on losses of individuals—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; \* \* \*"

A Section 165 loss is allowed only for the taxable year in which that loss is sustained. "For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Treas. Reg. § 1.165–1(d)(1)(1960).

In Rev. Rul. 62–197, 1962–2 Cum.Bull. 66, the Internal Revenue Service recognized losses occurring by confiscation of properties in Cuba.

"An act of confiscation has occurred when the taxpayer has been deprived of ownership of property or the normal attributes of ownership, such as receipt of income and control over the operation or use of the property, with little or no chance of being compensated therefor."

However, if a claim for reimbursement with respect to which there is a

"reasonable prospect of recovery" exists in connection with a loss deduction claimed, no portion of that loss is deductible until it can be ascertained whether that reimbursement will be received. Whether there is a "reasonable prospect of recovery" is to be determined from all of the facts and circumstances in the case. Treas.Reg. § 1.-165–1(d)(2)(i) (1960).

Both the Government and the taxpayers rely upon the landmark case of United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927). The White Dental Company suffered seizure of certain property by the German government during World War I, and claimed a deductible loss therefor. The case arose under Section 234 of the Revenue Act of 1918, which authorized deduction of "losses sustained during the taxable year and not compensated for by insurance or otherwise." The Treasury Regulations thereunder provided that such losses had to be evidenced by "closed and completed transactions," the test which has been carried forward through the years and remains in Section 1.165–1(d)(1) of the Treasury Regulations cited on page 4 hereof. Resolution of the case turned upon whether White Dental's loss was so evidenced by a "closed transaction" within the meaning of the Code and the Regulation. The Supreme Court held as follows:

"The quoted regulations, consistently with the statute, contemplate that a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment. It would require a high degree of optimism to discern in the seizure of enemy property by the German government in 1918 more than a remote hope of ultimate salvage from the wreck of the war. The taxing act does not require the taxpayer to be an incorrigible optimist."

The loss was complete when the seizure was made, even though later the German government bound itself to repay, and did repay a portion of the loss.

The instant case is distinguishable from the White Dental case. In White Dental, the assets were seized by the German government during the War, without promise of indemnification; it was not until some time later that the German government did partially reimburse White Dental. In the instant case, the Cuban Revolutionary Government, by its Urban Reform Law, did on October 14, 1960 deprive Mrs. Vila of all beneficial incidents of ownership in and to her urban rental realty; but within the provisions of said Urban Reform Law was a formula whereby Mrs. Vila was to be reimbursed for the taking of her said realty. Although it is a fact that Mrs. Vila did on October 14, 1960 lose all beneficial attributes of ownership of her said realty, she did not then suffer a loss of her said property in the context of Section 165 of the Code because the law which destroyed her beneficial ownership simultaneously conferred upon her a reasonable prospect of indemnity, the amount of which was to be later determined by the procedures and formula therein provided for that purpose.

Although the Urban Reform Law did exclude from indemnity for properties taken foreign citizens who did not reside in Cuba, a careful inspection of said Law discloses no requirement that a Cuban citizen must reside in Cuba in order to apply for and receive indemnification. Accordingly, when Mrs. Vila departed Cuba for the United States on October 31, 1960, several weeks after promulgation and the effective date of the Urban Reform Law, she did not thereby forfeit any rights that the Law extended to her for indemnity. Her right of indemnity subsisted until December 5, 1961, when she was stripped of it by the Cuban confiscation law which is known as Law 989, *supra*. Thereupon, this Court finds as a fact and concludes as a matter of law that the taking of Mrs. Vila's urban rental property by the Cuban Revolutionary Government pursuant to the Ur-

ban Reform Law on October 14, 1960 did not constitute a "loss" within the context of Section 165 of the Code; and that the confiscation which occurred on December 5, 1961 pursuant to Law 989 was the taking of a right of indemnity for which no claim of loss has been made in this case and with respect to which no evidence has been offered to support a deduction therefor.

This Memorandum Opinion shall serve in lieu of separate findings of fact and conclusions of law in this case. Counsel for the Defendant is hereby directed to submit an appropriate judgment form in conformity with this Memorandum Opinion within 15 days of the date of entry hereof.