**Cesar E. ALVAREZ et ux., Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 28789.**

United States Court of Appeals, Fifth Circuit.

Sept. 1, 1970.

Robert W. Rust, U. S. Atty., Lavinia L. Reed, Asst. U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, David E. Carmack, Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Bernard L. Jaffee, Miami, Fla., Joe N. Unger, Miami Beach, Fla., for appellees.

Before JONES, WISDOM and COLEMAN, Circuit Judges.

JONES, Circuit Judge:

Cesar Alvarez and his wife, Ana, filed income tax returns for the years 1961, 1962 and 1963. In 1964 and 1966 they filed claims for refund, asserting overpayments for the taxable years 1962 and 1963 in the amounts of $65.00 and $416.00. The Commissioner of Internal Revenue disallowed the claims and this action was brought in the district court to recover the amounts paid. Ana Alvarez was a party to the suit and is a party here because, as the wife of Alvarez, she joined in the filing of joint returns. The district court decided the case in favor of the taxpayers and entered a judgment for them. The United States has appealed.

Prior to 1961 Cesar Alvarez was a Cuban National residing in Cuba. He owned improved business property in Camaguey, Cuba, which was rented in several parcels to different tenants. On October 14, 1960, the Cuban Government enacted the Urban Realty Reform Law. By this law, the State of Cuba took almost all urban rental property, including that of Alvarez. The law provided for indemnification to the former owners of rental property in an amount established by formula and the only requirement for indemnification was the making of a declaration by a former owner of the property which he owned and on which he collected rent.

Alvarez made the necessary declaration and was awarded a total indemnification of $22,400.00 payable at the rate of $200.00 per month. He received eight monthly installments from October 31, 1960 to May 31, 1961. On June 6, 1961, Alvarez left Cuba and entered the United States. Prior to this date he had made several trips to the United States to visit the members of his family who had moved to Florida in November 1960. Alvarez became a resident alien and acquired the status of a United States taxpayer on July 6, 1961. Monthly indemnification checks were made out to Alvarez and delivered to his bank in Cuba until December 1961. These installments were not received by Alvarez since his physical presence was necessary to obtain the checks.

The Cuban Government, on December 5, 1961, enacted Law No. 989 providing for the total confiscation of property in Cuba, of whatever nature owned by Cuban Nationals who failed to return to Cuba within a designated time. Alvarez did not return and thus he ceased to be entitled, under the Cuban law, to receive payments of indemnification, both those which had accrued and thereafter to accrue, for the 1960 taking of his property.

In his claims for refund, Alvarez alleged that his interest in the property owned by him in Cuba had been taken on December 5, 1961, after he had become a resident alien, and that this loss was deductible under Section 165 of the Internal Revenue Code of 1954[1] as a loss of property used in his trade or business and that he was entitled to a net operating loss carryover[2] to 1962 and 1963. The Government contends that if there was a loss, it was sustained by Alvarez before he became a resident alien and it is therefore not an allowable loss within the meaning of Section 165 of the Internal Revenue Code. The Government takes the position that because of the difficulties which Alvarez would encounter in realizing upon his right to indemnification after leaving Cuba and before becoming a resident alien, he had lost the right which would have been open to him if he could have presented himself at his bank in Cuba to receive and cash the indemnification checks. If Alvarez sustained a loss of his Cuban property and property rights before he became a resident alien, the loss would not be allowable as a deduction.[3]

Although it would have been necessary for Alvarez to return to Cuba in order to obtain and cash the indemnification checks issued to him and sent to his bank, the right existed and was recognized by the Cuban Government, which was performing its undertaking to make payments. The checks which had been issued were payable to him and the right of indemnification continued. There was not, in the existing situation, any condition or state of hopelessness of recovery so as to constitute, within the meaning of the tax law, a loss of his right to indemnification. See Estate of Fuchs v. Commissioner of Internal Revenue, 2d Cir. 1969, 413 F.2d 503; Colish v. Commissioner of Internal Revenue, 48 T.C. 711. At the time Alvarez became a resident alien he had, in our opinion, property rights consisting of the obligations of the Cuban Government in its promise of indemnification and in the checks which had been issued to him as payee and delivered to his bank in Cuba.

It is not necessary, for the purposes of this opinion, to determine whether Alvarez sustained a loss at the time of the taking of his real property in Camaguey, but, if he did then sustain a loss, it was a loss of the difference between his adjusted basis in the property and the value of his right to indemnification. Such loss, if any, would play no part in the computation of any income taxes payable to the United States since it occurred prior to the time in which Alvarez became a resident alien.[4]

The controlling issue on this appeal is whether Alvarez sustained a loss by reason of the confiscation of the unused checks and the remaining value of his right of indemnification resulting from Law No. 989; and if he did thereby sustain a loss, was it a trade or busi-

---

1. The relevant portions of this section of the Code provide as follows:

 "(a) *General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

 \* \* \* \* \*

 "(c) *Limitation on Losses of Individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

 (1) Losses incurred in a trade or business \* \* \*." 28 U.S.C.A. § 165 (a) and (c) (1).

2. See 28 U.S.C.A. § 172.

3. See 26 U.S.C.A. § 873; Treas.Reg. 1.871–1; Schnur v. Commissioner of Internal Revenue, 10 T.C. 208; Houdry v. Commissioner of Internal Revenue, 7 T. C. 666.

4. Id.

ness loss under Section 165(c) entitling him to have such loss allowed in the computation of his tax liability for 1961 and the subsequent carryover years.[5] Alvarez had property and property rights in Cuba after becoming a resident alien and before the effective date of Law No. 989. There can be no doubt that this law divested him of his property and property rights, resulting in a loss to him.

 At the time when the Cuban Government took the rented real property of Alvarez, he was divested of trade or business property and for this property there was substituted the non-interest bearing obligation of the Cuban Government. There was a conversion of one kind of property into that of another kind. All of the characteristics of finality were present. No profit could have resulted from the ownership of the right of indemnification. Thus the loss sustained does not meet the profit motive test to qualify it as a trade or business loss. See 5 Mertens, Law of Federal Income Taxation, § 28.-31, 130–31. The Cuban promise of indemnification was an obligation for the payment of money, nothing more or less. The obligation received did not have the trade or business attributes of the property for which it was received even though the conversion was involuntary. The trade or business attribute cannot attach to the right of indemnification by the application of a

doctrine of relation back to the trade or business property for which the indemnification was given. Situations in which there has been a relation back to prior transactions in earlier tax years to determine the taxable nature of a subsequent transaction have been cases where the subsequent transaction was an amendment or modification of the original one. See Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6; Wener v. Commissioner of Internal Revenue, 9th Cir. 1957, 242 F.2d 938; Commissioner of Internal Revenue v. Adam, Meldrum & Anderson Company, 2d Cir. 1954, 215 F.2d 163; Duveen Brothers, Inc. v. Commissioner of Internal Revenue, 2d Cir. 1952, 197 F.2d 118. Here, the confiscation of the right of indemnification and other intangibles was related to the earlier taking only in that the fruit of the first was the subject of the second. This is not enough. The 1961 law did not in any way amend, modify, or even relate to the earlier law. Rather, Law No. 989 spoke to a different situation, namely, the property of Cuban absentees.

 It is contended by Alvarez that the taking of his real estate by the Cuban Government in 1960 and the giving to him of a right of indemnification constituted an installment sale and that he was entitled to treat the confiscation of his right of indemnification as a loss under Section 453(d) (1).[6]

---

5. It should be noted that for Alvarez to receive any tax benefit by way of a deduction and carryover of his loss, the loss must be characterized as one incurred in his trade or business. The loss cannot be deducted under Section 165(c) (3) of the Code because the Internal Revenue Service has taken the position, and the Tax Court has agreed, that, in the absence of special legislation, a loss by way of confiscation under color of legal authority is neither a casualty nor a theft. Powers v. Commissioner, 36 T.C. 1191, I.T. 4086, 1952–1 Cum.Bull. 29. Similarly, if the loss is characterized as one incurred in a transaction entered into

for profit under Section 165(c) (2), a deduction for such loss cannot be a part of a net operating loss carryover. 26 U.S.C.A. § 172(c), (d) (4); Treas.Reg. § 1.172–3(a) (1), (a) (2), and (a) (3) (ii–iii). A Section 165(c) (2) loss may be utilized in determining a "net operating loss" deduction only to the extent of nonbusiness income in the year of loss. 26 U.S.C.A. § 172(d).

6. "(d) *Gain or loss on disposition of installment obligations.—*
 (1) *General rule.—*If an installment obligation is satisfied at other than its face value or distributed, transmitted,

It is doubtful that the taking of Alvarez' property could be regarded as an installment sale within the meaning of this provision of the Code. But, whether so or not, Alvarez did not bring himself within the provisions of Section 453 through compliance with the election requirement of that statute. Marcello v. Commissioner of Internal Revenue, 5th Cir. 1967, 380 F.2d 499, cert. den. 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835. The taxpayer's contention is plausible, but we think it must be rejected.

We are aware of decisions by other courts involving questions similar to those which are here presented,[7] including a case in which it was held that losses similar to that sustained by Alvarez are trade or business losses.[8] However, the conclusion that a loss such as was sustained by Alvarez is a trade or business loss is not the better view. We believe that a contrary result must be reached. The case of Luis Bosch, now pending on appeal before this Court,[9] involves a somewhat different issue than is presented by this case.

Since we decide this case, which seems to be one of first impression in this Court, on the ground that the right of indemnification was not property held for trade or business, it is unnecessary to give consideration to the other questions presented. The judgment of the district court will be reversed and cause remanded for entry of an appropriate judgment in keeping with this opinion.

Reversed and remanded.

sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—

 (a) the amount realized, in the case of satisfaction at other than face value or a sale or exchange, or

 (b) the fair market value of the obligation at the time of distribution, transmission, or disposition, in the case of distribution, transmission, or disposition otherwise than by sale or exchange. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received." 26 U.S.C.A. § 453(d) (1).

7. Luis Bosch v. Commissioner, T.C.Mem. 1970–66; Vila v. United States, S.D. Fla.1969, 301 F.Supp. 1004; Garrigo v. United States, N.D.Tex.1968, 296 F.Supp. 1110.

8. Beltran v. Commissioner, 69–2 USTC 85,752. Appeal pending, 7th Cir.

9. Bosch v. C.I.R. No. 30152, 5th Cir., July 20, 1970.