LOUIS A. MITCHELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mitchell v. Commissioner
Docket No. 21097-92
United States Tax Court
T.C. Memo 1994-237; 1994 Tax Ct. Memo LEXIS 238; 67 T.C.M. (CCH) 3015; May 26, 1994, Filed *238 P was employed as chairman and CEO of a thrift savings and loan, C. C was subject to the regulatory authority of the Federal Home Loan Bank Board (Bank Board). As part of 1987 yearend tax planning, C decided to sell certain stock in X in order to offset the capital losses against its capital gains. P arranged for an indirect sale of the X stock to himself. After completing the transaction and learning that it violated a Bank Board regulation, P so informed the Bank Board. C's auditor determined that C's expected capital loss from the sale of the X stock would be disallowed under sec. 267, I.R.C. The auditor informed the Bank Board that C's lost tax benefits amounted to $ 755,172. The Bank Board informed P that because of the violation of the regulation, P must either give back the X stock or pay C $ 755,172. Had P not agreed to one of these choices, the Bank Board would have sought P's removal. In 1988, the year in issue, P paid C $ 755,172. P deducted this payment as the only item on Schedule C, Profit or Loss from Business (Sole Proprietorship). Held: P's payment is not deductible under sec. 162, I.R.C., but must be capitalized in his basis in the X stock. For petitioner: *239 Robert Jeffery Onda. For respondent: Stephen J. Neubeck. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court on the petition of Louis A. Mitchell (petitioner) for redetermination of respondent's determinations reflected in her notice of deficiency. Respondent determined a $ 215,494 deficiency in and a $ 53,873 addition to petitioner's 1988 Federal income tax. After concessions by the parties, [1] *240 the issues for decision are (1) whether a payment made by petitioner to his employer was deductible as an ordinary and necessary business expense, [2] and (2) whether petitioner is liable for an addition to tax under section 6661(a). We hold that the payment is a capital expenditure, and that petitioner is not liable for an addition to tax under section 6661(a). Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Columbus, Ohio, at the time he filed his petition. During 1987 and 1988, petitioner was employed both as chairman of the board and as chief executive officer of County Savings Bank (County), a thrift savings and loan association in Columbus, Ohio. County was a wholly owned subsidiary of First Financial Group, Inc. (FFG). Petitioner was chairman of the board and a shareholder of FFG; he owned approximately 42 percent of the outstanding shares of stock directly, and an additional 53 percent indirectly. Petitioner's compensation as chief executive officer of County and chairman of the board of FFG constituted nearly all of his income. As part of its 1987 year-end tax planning, County decided to sell shares of stock that it held for investment in Home and City Savings Bank (Home), a publicly traded company, *241 in order to offset an anticipated capital loss from the sale against capital gains realized during the same year. The decision to sell the Home stock was formalized during a November 24, 1987, investment committee meeting of County. Petitioner thought the Home stock was a good investment and wished to retain an interest in it. In addition, he believed that selling a large block of Home stock publicly would depress the price and cause County to lose money on the sale. In early December 1987, petitioner consulted with Kenneth Cooke (Cooke) of Price Waterhouse, County's auditor and tax adviser, about buying the stock himself. Cooke told petitioner that a sale by County to petitioner would constitute a sale to a related party, which would preclude County from recognizing the tax loss under section 267. Cooke also advised petitioner that petitioner could not buy the stock himself within 30 days after County sold it because it would constitute a wash sale under section 1091, also precluding deduction of the loss. After the conversation with Cooke, petitioner, without consulting with Cooke or anyone else, arranged for the sale by County of 286,400 shares of Home stock to County vice *242 presidents, Benson Scott Beaver (Beaver) and Charles W. Claggett III (Claggett), as cooperative intermediaries for the sale of the Home stock to himself. Petitioner provided them with the funds to pay for the stock. In early December 1987, County sold the Home stock to Beaver and Claggett at the market price of $ 13 per share; the sale resulted in a loss to County of $ 2,079,670. Petitioner reported the sale of the Home stock to the County board of directors, but did not tell the Board that Beaver and Claggett had purchased the shares, or that he planned to purchase the shares from Beaver and Claggett. Pursuant to their agreement with petitioner to sell the Home stock to him, in January 1988, Beaver and Claggett transferred to petitioner 269,400 shares of the Home stock for $ 13 per share. [3]
*243 During all relevant periods, County, and petitioner as County's chairman and chief executive officer, were subject to the regulatory authority of the Federal Home Loan Bank Board of Cincinnati (Bank Board). The Bank Board is the regulatory arm of the Federal Home Loan Bank. Under Bank Board regulations, the indirect sale of the Home stock by County to petitioner required prior approval of the Bank Board. This approval was not obtained. By letter dated April 13, 1988, petitioner was advised in writing by his counsel that the December 1987 Home stock sale violated Bank Board Regulation 563.41, 12 C.F.R. 563.41 (1993), which requires that transactions between Bank Board institutions and "affiliated persons" receive prior written approval from the principal supervisory agent for the Bank Board. Petitioner, Beaver, and Claggett were all "affiliated persons" of a Bank Board institution. By letter dated April 21, 1988, petitioner advised Kurt Kreinbring (Kreinbring), supervisory agent for the Bank Board, that the Home stock transaction violated Bank Board Regulation 563.41. Cooke determined that section 267 prohibited County from recognizing the $ 2,079,670 loss that it realized *244 on the sale of the Home stock; by letter dated April 28, 1988, Cooke advised Kreinbring of this determination. By letter dated May 2, 1988, Cooke forwarded a computation to the Bank Board reflecting that County's lost tax benefits resulting from its inability to recognize the $ 2,079,670 loss amounted to $ 755,172. Kreinbring held petitioner accountable for not obtaining written approval of the Home stock transaction. By letter dated May 20, 1988, Kreinbring directed petitioner to return the Home stock to County or, alternatively, to pay County $ 755,172. If petitioner had refused to return the stock or to pay County $ 755,172, Kreinbring would have taken appropriate regulatory action against him. Giving back the stock would have cost petitioner approximately $ 3.3 million because the price of Home stock had increased significantly. Petitioner elected to pay County the sum of $ 755,172, which payment was made on July 5, 1988. This payment enabled petitioner to retain the Home stock he had purchased. Petitioner consulted with Cooke on how to report his $ 755,172 payment to County. Cooke advised him to deduct the payment because Cooke believed petitioner made the payment to *245 protect his job. Cooke also advised petitioner to disclose the transaction. Cooke prepared petitioner's 1988 Federal income tax return. On that return, petitioner deducted the $ 755,172 payment on the line for "Other expenses" of a 1988 Schedule C, Profit or Loss From Business (Sole Proprietorship), that listed his business or profession as "Chairman Savings & Loan". This payment was the only item on that Schedule C. In connection with the $ 755,172 deduction, the return refers the reader to Statement 4, which in its entirety reads as follows: OTHER EXPENSES - SCHEDULE C, LINE 29 BUSINESS NAME: COUNTY SAVINGS BANK
REQUIRED FHLBB PAYMENT * 755,172.
TOTAL TO SCHEDULE C, LINE 29
755,172.
* Taxpayer was required to repay corporation
the tax effect of a related party loss by the
Federal Home Loan Bank Board. Amount has
been treated as a trade or business loss.
Cooke prepared the language on this statement on behalf of petitioner. In July 1988, after discussing section 267 with Cooke, petitioner sold 25,000 shares of Home stock. Petitioner made various sales of the Home stock during 1988 and 1989. In reporting the income from these sales, all of which were *246 for a price in excess of $ 20.24 per share, petitioner reported gain in accordance with section 267(d), which effectively gave petitioner the benefit of County's $ 20.24 per share basis in the Home stock. OPINION Respondent determined that the $ 755,172 payment petitioner made to County was a nondeductible capital expense under section 263. Petitioner argues that the payment was either a business expense deductible under section 162, or a loss deductible under section 165. Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 162(a) allows a deduction for ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Expenses incurred in order to preserve one's employment may be deductible under section 162(a) in appropriate circumstances. See, e.g., Gould v. Commissioner, 64 T.C. 132, 135 (1975); Pike v. Commissioner, 44 T.C. 787, 799 (1965); Conti v. Commissioner, T.C. Memo. 1972-89. However, even though a payment may help to prevent damage to a taxpayer's business, *247 the payment is not deductible under section 162 if it is directly connected with the acquisition or protection of a capital asset. See Barrett v. Commissioner, 96 T.C. 713, 722-724 (1991); Wagner v. Commissioner, 78 T.C. 910 (1982); Bradford v. Commissioner, 70 T.C. 584 (1978); see also Brown v. Commissioner, 529 F.2d 609 (10th Cir. 1976), revg. T.C. Memo. 1973-275; Cummings v. Commissioner, 506 F.2d 449 (2d Cir. 1974), revg. 61 T.C. 1 (1973); Anderson v. Commissioner, 480 F.2d 1304 (7th Cir. 1973), revg. 56 T.C. 1370 (1971); Mitchell v. Commissioner, 428 F.2d 259 (6th Cir. 1970), revg. and remanding 52 T.C. 170 (1969). In Brown v. Commissioner, supra; Cummings v. Commissioner, supra; Anderson v. Commissioner, supra, and Mitchell v. Commissioner, supra, *248 the taxpayers each sold stock at a capital gain, receiving "short-swing profits" under section 16(b) of the Securities Exchange Act of 1934, ch. 404, 48 Stat. 881, 896, 15 U.S.C. sec. 78p(b) (1988). In these cases, the Courts of Appeals held that when the taxpayer was required to disgorge the profit, the rule of Arrowsmith v. Commissioner, 344 U.S. 6 (1952), required the payment to be capitalized even if the payment served to protect the taxpayer's business reputation. Brown v. Commissioner, supra at 612; Cummings v. Commissioner, supra at 451; Anderson v. Commissioner, supra at 1308; Mitchell v. Commissioner, supra at 263. Similarly in Bradford v. Commissioner, supra, we held that an insider's repayment of profits on stock transaction alleged to violate the Securities Exchange Act was a capital expenditure because the origin of the claim against him was his purchase of the stock, not protection of his business reputation. Accord Barrett v. Commissioner, supra; *249 Wagner v. Commissioner, supra.
The costs of acquiring a capital asset or of perfecting or defending title to such property are capital expenditures. Sec. 1.263(a)-2(a), (c), Income Tax Regs. In the instant case, the adverse tax consequences to County caused by petitioner's acquisition of the Home stock caused Kreinbring to require petitioner either to make a $ 755,172 payment or return the stock to County in order to settle the Bank Board's claim against him. By making the $ 755,172 payment, petitioner was able to retain the stock. Because the claim against him arose from his purchase of the stock, a capital asset, and the payment enabled him to keep the stock, we conclude that the payment may not be treated as a currently deductible business expense, but instead must be capitalized and added to the basis of the shares he owned at the time he made the payment. See Bradford v. Commissioner, supra.
Petitioner argues in the alternative that he is entitled to a deduction under section 165 for a loss incurred in connection with a trade or business. Based on our holding that petitioner must capitalize the $ 755,172 payment, *250 we conclude that petitioner has not sustained a loss under section 165. Respondent determined that petitioner is liable for an addition to tax under section 6661. Section 6661 provides for an addition to tax if there is a substantial understatement of income tax. [4] An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Petitioner argues that he adequately disclosed the transaction in issue in statement 4, attached to his 1988 return. Respondent's regulations provide that disclosure on a properly completed *251 Form 8275 or another statement attached to the return that includes, among other things, a caption identifying the statement as a disclosure under section 6661, constitutes adequate disclosure. Sec. 1.6661-4(b)(1), Income Tax Regs. In contrast, disclosure is inadequate where "it consists of undifferentiated information that is not arranged in a manner that reasonably may be expected to apprise the Internal Revenue Service of the identity of the item, its amount, and the nature of the potential controversy". Sec. 1.6661-4(b)(3), Income Tax Regs. Although petitioner did not make a specific reference to section 6661 on his return or its attached statements, statement 4 was sufficient to apprise the Internal Revenue Service of the identity of the deduction, its amount, and the potential controversy over the fact that it had been treated as a trade or business deduction. See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Thus, we hold that petitioner is not liable for the addition to tax under section 6661. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. In her notice of deficiency, respondent allowed Louis A. Mitchell (petitioner) to deduct a long-term capital loss of $ 32,500, and increased investment interest by $ 32,500. Petitioner did not assign these determinations as errors in his petition, so they are not in issue. Rule 34(b)(4).↩
2. If this issue is decided in favor of respondent, a computational adjustment will also be required.↩
3. Beaver and Claggett each retained 5,000 shares, pursuant to options granted by petitioner. The remaining 7,000 shares were purchased at $ 13 per share by various officers of County pursuant to options granted by petitioner.↩
4. The amount of the addition to tax where it is assessed after Oct. 21, 1986, is equal to 25 percent of the amount attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951.↩